UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MEIKO S. PATTON,

Plaintiff,

v.

DAVID P. STEINER,

Defendant.

Case No. 2:23-cv-0048-DJC-JDP (PS)

ORDER

Plaintiff, proceeding pro se, brings this employment discrimination action against Postmaster General David Steiner.[1] Defendant has filed a motion to dismiss the third amended complaint. For the reasons stated below, defendant's motion is granted with leave to amend.

**Background**

The following allegations are taken from the third amended complaint ("TAC") and, for purposes of this order, are assumed to be true. Plaintiff has been in the employ of the United States Postal Service ("USPS") for over 27 years. ECF No. 9 at 8. Prior to the alleged instances, she "had never received any disciplinary action." *Id.* During the alleged actions, plaintiff worked as a strategic communications specialist, "serving as a spokesperson" for USPS in Sacramento.

[1] Steiner was automatically substituted for Doug Tulino under Federal Rule of Civil Procedure 25(d).

*Id.* "In this role, Plaintiff was responsible for responding to media inquiries, coordinating with various USPS departments, and following specific protocols established by her supervisors." *Id.*

On August 17, 2020, plaintiff "received a phone call from John DiPeri, a district manager from Arizona, asking that she arrange a congressional tour." *Id.* at 9. When plaintiff explained that such request was outside the purview of her role, "DiPeri said to her in a demeaning manner, 'so you're not going to help?'" and proceeded to hang up the phone. *Id.* Plaintiff alleges that Diperi's "tone, manner of speaking, and choice of words demonstrated racial animus toward Plaintiff as an African American woman." *Id.*

After this interaction, plaintiff documented the call by informing her supervisor, John Hyatt. *Id.* Plaintiff alleges that she has direct knowledge that a white female co-worker had also followed instructions in passing along congressional walkthrough requests to another department, but that coworker "was never disciplined or received a letter of warning for following these protocols." *Id.* Plaintiff similarly alleges that a Hispanic male coworker and an Asian female coworker were not disciplined for similar conduct. *Id.*

On August 19, 2020, plaintiff "received an email from Claudia Munoz asking that Plaintiff handle a matter outside of her job responsibilities."[2] *Id.* at 10. After plaintiff responded that the request was outside of her job duties, "Munoz responded in an intimidating and bullying manner specifically because of Plaintiff's race." *Id.* Plaintiff does not allege what Munoz said. Later that day, plaintiff "had a phone conversation with her manager, John Hyatt, during which she explicitly reported that she was being discriminated against based on her race" by Munoz and DiPeri. *Id.*

On August 28, 2020, plaintiff "received notice that she was to attend an in-person investigation interview because DiPeri had lodged a complaint against her based on the August 17 phone call." *Id.* This interview never took place. *Id.*

On September 4, 2020, plaintiff emailed Hyatt's boss to convey that she was "being attacked and harassed from inside our organization." *Id.* at 11. Plaintiff also claimed that her

[2] Plaintiff does not state whether Munoz worked for USPS and, if so, in what capacity.

rights were being violated by requiring in-person attendance during the COVID-19 pandemic. *Id.* Hyatt's boss replied that she was "not going to intercede/ or override one of [her] managers' decision of action." *Id.*

On September 21, 2020, Hyatt issued plaintiff "a letter of warning, claiming that she failed to discharge her assigned duties and that her performance was unacceptable." *Id.* at 10. Plaintiff alleges that letter "came in direct retaliation for Plaintiff's protected activity of reporting discrimination" and affected her "employment record and opportunities for harassment." *Id.* at 11.

After plaintiff filed an internal complaint in January 2021, she allegedly experienced "ongoing harassment and retaliation." *See id.*; ECF No. 5 at 8. Specifically, plaintiff alleges that she was: (1) "required to attend in-person meetings despite telework status during the COVID-19 pandemic"; (2) "denied union representation at investigative meetings"; (3) "subjected to disparate treatment" by "having her name uncapitalized in official USPS publications"; and (4) "[r]eceiving intimidating emails from management questioning her attendance at required meetings despite her documented presence." ECF No. 9 at 11.

As a result, plaintiff alleges that she "has suffered severe physical, emotional, and financial damages" including hair loss, dental problems, sleep deprivation and anxiety, loss of accrued sick leave, and damage to her professional reputation and career prospects. *Id.* at 12.

**Procedural History**

Plaintiff initiated this action in January 2023. ECF No. 1. In April 2026, after dismissing prior complaints, the court directed service of the TAC. ECF No. 17. In August 2026, defendant filed a motion to dismiss. ECF No. 26. Plaintiff has filed an opposition, ECF No. 27, and defendant has filed a reply, ECF No. 28.[3]

**Legal Standard**

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v.*

---

[3] Only every other page of plaintiff's opposition was filed. *See* ECF No. 27. This has made it difficult to understand and address plaintiff's arguments.

*Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

In assessing the sufficiency of the pleadings, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Those facts must be sufficient to push the claims "across the line from conceivable to plausible." *Id.* at 683. Ultimately, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

The court must construe a pro se litigant's complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). However, a liberal interpretation of a complaint "may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

## Analysis

Plaintiff brings three causes of action pursuant to Title VII of the Civil Rights Act of 1964: (1) racial discrimination; (2) retaliation; and (3) hostile work environment. ECF No. 9 at 12-14. Defendant moves to dismiss all claims. The court analyzes the first two claims together before addressing the third.

### A. Discrimination and Retaliation

Defendant argues that plaintiff's discrimination and retaliation claims must be dismissed because she has not sufficiently alleged that she suffered an adverse employment action. ECF No. 26-1 at 3-4. To state a racial discrimination or retaliation claim, a plaintiff must establish that she suffered an adverse employment action. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (holding that, to state a racial discrimination claim under Title VII, a plaintiff must allege that she "suffered an adverse employment action"); *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003) (holding that, to state a retaliation claim under Title VII, a plaintiff must show that "his employer subjected him to an adverse employment action").

The Court of Appeals has held that "an adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment."[4] *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (cleaned up). "[C]lear examples of adverse employment actions include, 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Westling v. Hegseth*, No. 22-cv-0514-TUC-JGZ, 2026 WL 2056042, at *13 (D. Ariz. July 16, 2026) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). "For retaliation, an adverse action that does not alter terms or conditions of employment may suffice, but only if the action was 'materially adverse,' producing an injury or harm that is serious enough to 'dissuade[ ] a

---

[4] The Supreme Court recently held that, to establish discrimination under Title VII, a plaintiff need not establish "significant" harm but "must show some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024). The Court maintained that a retaliation claim must show "materially adverse" action, "meaning that it causes 'significant' harm." *Id.* at 357.

reasonable worker from making or supporting a charge of discrimination.'" *George v. Potter*, No. 1:03-cv-6052-DLB, 2010 WL 1404346, at *10 (E.D. Cal. Apr. 6, 2010), *aff'd sub nom*, 459 F. App'x 671 (9th Cir. 2011) (quoting *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006)).

Here, plaintiff claims that she suffered adverse employment actions in the discrimination context "by being subjected to an investigation and receiving a letter of warning" and in the retaliation context by being issued the same letter of warning. ECF No. 9 at 12-13. Regarding the alleged investigation, plaintiff pleads that an interview never occurred, and she otherwise does not allege that there was any outcome from the investigation. *See id*. at 10. Courts have found that an investigation alone is insufficient to establish an adverse employment action. *See Lee v. Hawaii*, No. 09-cv-0032-SOM-KSC, 2010 WL 235009, at *7 (D. Haw. Jan. 20, 2010), *aff'd*, 454 F. App'x 610 (9th Cir. 2011) ("Merely being subject to an investigation while others are not does not rise to the level of an adverse employment action for purposes of Title VII.") (collecting cases). For these reasons, this allegation falls far short of showing that the investigation "materially affect[ed] the compensation, terms, conditions, or privileges" of her employment. *See Davis*, 520 F.3d at 1089.

The letter fails to establish an adverse action in the discrimination or retaliation contexts. First, plaintiff does not show that the warning letter altered the terms or conditions of her employment. *See id*. Courts have found that "[a] USPS letter of warning does not constitute an adverse employment action for purposes of Title VII in the discrimination context." *Johnson v. Potter*, No. 09-cv-0529-LJO-DLB, 2011 WL 2360360, at *7 (E.D. Cal. June 9, 2011) (collecting cases); *see also Ballard v. Donahoe*, No. 2:11-cv-2576-JAM-AC, 2014 WL 1286193, at *11 (E.D. Cal. Mar. 27, 2014) ("Numerous courts have held that [a letter of warning], standing alone, does not constitute an adverse employment action.") (collecting cases). There is no allegation of "any accompanying adverse action, such as job loss, demotion, or suspension" or that the letter "was used in subsequent disciplinary proceedings." *See id*. As such, the warning letter is insufficient to establish an adverse action.

Second, regarding retaliation, plaintiff fails to show that the warning letter would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 60 (internal quotation marks and citation omitted). Courts have also found that "a USPS letter of warning does not constitute an adverse employment action for purposes of Title VII in the . . . retaliation context." *George*, 2010 WL 1404346, at *12 (collecting cases). Plaintiff does not plausibly state that the issuance of the warning letter would dissuade a reasonable employee from complaining of racial discrimination.[5]

Accordingly, plaintiff's discrimination and retaliation claims must be dismissed. Because plaintiff has not been previously notified of this pleading deficiency and she proceeds pro se, leave to amend is appropriate.

**B. Hostile Work Environment**

Defendant argues that plaintiff's hostile work environment claim is insufficiently pleaded. ECF No. 26-1 at 5. To state a Title VII hostile work environment claim based on race, a plaintiff must show that: (1) she was subjected to verbal or physical conduct because of race; (2) this conduct was unwelcome; and (3) this conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003); *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2001). The Supreme Court has held that "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "To prevail on a hostile work environment [ ] claim, the plaintiff must show that her work environment was both subjectively and objectively hostile; that is, she must show that she perceived her work environment to be hostile, and that a reasonable person in her position would perceive it to be so." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005).

Plaintiff pleads three actions in which she was allegedly subjected to verbal conduct because of race: (1) DiPeri saying to plaintiff during a conversation "so you're not going to

[5] It bears mention that after receiving the warning letter in September 2020, plaintiff initiated an internal complaint in January 2021 alleging racial discrimination. *See* ECF No. 5 at 8.

help?"; (2) Munoz responding to plaintiff's email "in an intimidating and bullying manner"; and (3) the pattern of management "disciplining Plaintiff for actions that non-African American employees engaged in without consequence." ECF No. 9 at 9-10, 13. These allegations are insufficient to establish a hostile work environment.

First, plaintiff does not plausibly plead that the statement "so you're not going to help?" was based on plaintiff's race. Plaintiff alleges that DiPeri "spoke to [plaintiff] in a racially charged manner that Plaintiff perceived as 'speaking to a slave on his plantation.'" ECF No. 9 at 9. However, plaintiff does not allege sufficient facts to show that a reasonable person in her position would perceive this statement as being racially charged. *See Dominguez-Curry*, 424 F.3d at 1034. Further, plaintiff does now show that this statement was sufficiently severe or pervasive to alter the conditions of her employment. *See Manatt*, 339 F.3d at 798. Indeed, plaintiff does not allege that DiPeri took any further action against her. For these reasons, the first alleged action cannot support a hostile work environment claim.

Second, plaintiff's vague allegation that Munoz emailed her "in an intimidating and bullying manner" is insufficient. *See* ECF No. 9 at 10. Plaintiff does not allege what Munoz stated and why a reasonable person in plaintiff's position would perceive the statement as being motivated by plaintiff's race. Further, plaintiff does not establish that this email altered the conditions of her employment. As such, the second alleged action cannot support a hostile work environment claim.

Third, while plaintiff's allegation of a racist pattern in discipline is concerning, it falls short of supporting her claim. As noted, plaintiff alleges that three of her coworkers—none of whom are African American—were not disciplined for similar conduct. *See* ECF No. 9 at 9. Specifically, plaintiff alleges that a white female coworker "followed the same instructions regarding congressional walk-throughs" but was not "disciplined or received a letter of warning"; "Plaintiff's Hispanic male counterpart . . . also followed the same instructions regarding congressional walk-throughs but was never disciplined or warned"; and "Plaintiff's Asian female counterpart . . . could not be found on a weekend, and [when] a customer contacted Plaintiff, she properly forwarded the matter to her manage, who then berated Plaintiff, while the Asian co-

worker faced no consequences for being unavailable." *Id.*

Plaintiff has sufficiently alleged that at least two of her coworkers engaged in a similar manner as her regarding an inquiry for a congressional walkthrough, yet those employees, unlike plaintiff, were not disciplined or issued a warning letter. However, plaintiff does not show that such alleged conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. *See Manatt*, 339 F.3d at 798. As established above, plaintiff has not shown that the warning letter altered the conditions of her employment.

Accordingly, plaintiff's hostile work environment claim must be dismissed. Because plaintiff proceeds pro se and this is the first dispositive motion brought by defendant, leave to amend is appropriate.

**Conclusion**

Accordingly, it is ORDERED that:

1. Defendant's motion to dismiss, ECF No. 26, is GRANTED.
2. The third amended complaint, ECF No. 9, is DISMISSED with leave to amend.
3. Plaintiff may file an amended complaint within twenty-one days. Failure to do so will result in a recommendation that this action be dismissed for failure to state a claim.

IT IS SO ORDERED.

Dated: November 12, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE